FILED
U.S. CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ JAN 22 2007 ★
BROOKLYN OFFICE

C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

KEENAN RAMSEY,

                       Petitioner,

    -against-

FLOYD BENNETT,

                       Respondent.

-------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

02-CV-5290 (BMC)(LB)

**COGAN**, District Judge.

    Petitioner in this habeas corpus proceeding alleges that he had ineffective assistance of counsel at trial because his lawyer failed to seek dismissal of the indictment against him on statute of limitations grounds. The claim arises from the fact that petitioner committed the crime in 1992, he was not arrested until 1998, and the statute of limitations on the charge of which he was convicted is five years. Petitioner claims that if trial counsel had interviewed him more thoroughly, counsel (a) would not have conceded petitioner's absence from the jurisdiction in a pretrial hearing, a concession which, according to petitioner, effectively acknowledged a toll of the statute of limitations and thereby foreclosed any argument based on it; and (b) would have successfully moved to dismiss the charge of which petitioner was convicted on statute of limitations grounds.

    I hold that the state court improperly applied a state procedural bar to petitioner's claim. However, because the state court also reached the merits of petitioner's claim and rejected it, and petitioner has failed to demonstrate that the court's conclusion was

contrary to or an unreasonable application of Supreme Court authority, his petition is denied.

## BACKGROUND

Petitioner and an accomplice, Edourdo Innis, were prosecuted for shooting and killing Barrington Ellis on January 25, 1992. They left the jurisdiction shortly after the shooting and petitioner was not arrested until November 18, 1998. The specific charges against petitioner and Innis were two counts of Second Degree Murder, and Second Degree and Third Degree Criminal Possession of a Weapon.

Prior to trial, the court held hearings on pretrial motions. The one that petitioner considers important here arose from a motion by Innis, in which petitioner joined, under People v. Singer, 44 N.Y.2d 241 (1978) (the "Singer hearing"), in which the defendants sought dismissal of both the murder and weapons charges on the ground that the State had unreasonably delayed in obtaining the indictment, thus violating both defendants' due process and speedy trial rights. Petitioner's trial counsel conceded that petitioner was out of the jurisdiction from 1992-1995, but argued that the delay in indicting from 1995-1998 was unreasonable. The trial court, after more than a day of testimony from the detectives on the case, denied the motion as to both defendants.

After a jury trial, petitioner was acquitted of the murder charges but convicted of the Second Degree Weapons charge. Since he was a second violent felony offender, he ultimately (after a remand for resentencing) received a maximum of twelve years imprisonment. His conviction was affirmed; the grounds raised on direct appeal are not at issue in the instant proceeding.

2

While petitioner's direct appeal was pending, he moved *pro se* under N.Y. Criminal Procedural Law §440.10 to vacate his conviction. He alleged that the weapons possession charges were barred under New York's five-year statute of limitations and under the State Constitution's due process clause. In addition, he raised the same ineffective assistance claim that he is raising in the instant petition, namely, that counsel failed to seek dismissal on statute of limitations grounds; that counsel had failed to interview him concerning his whereabouts from January 1992 through November 1995; and that because of that failure, counsel had conceded defendant's absence from the jurisdiction at a pretrial hearing. According to petitioner, this concession foreclosed the statute of limitations argument because under New York law, absence from the jurisdiction tolls the running of the statute of limitations.

In opposition to the §440.10 motion, the State submitted an affidavit from petitioner's trial counsel, which gave a detailed description of counsel's conversations with petitioner concerning his absence from the jurisdiction between 1992 and 1995. Trial counsel's affidavit stated that petitioner had told him that he had deliberately absented himself from the jurisdiction, going to Panama shortly after the shooting, out of fear of arrest. Trial counsel asserted that it was not until a year after sentencing that petitioner told trial counsel that his statements about his absence had been a "misrepresentation," and that his trips to Panama during the relevant period were only sporadic.

Trial counsel further averred that regardless of whether petitioner had a statute of limitations defense as to the weapons charge, his decision not to pursue a motion on that ground was strategic. He noted that:

3

> There was overwhelming evidence by two testifying witnesses that placed defendant at the scene of the shooting, with a nine-millimeter gun [the murder weapon] pointed at the victim when he was shot. One of the eyewitnesses, Paul Wade, who stood alongside the victim, across from defendant and codefendant, stated that he saw defendant and codefendant actually fire their nine-millimeter guns. Defendant was charged with two counts of Murder in the Second Degree. My strategy was primarily to protect defendant from a murder conviction. Therefore, in my estimation, the best strategy was to allow the jury the opportunity to compromise any guilty verdict solely on the lesser charge of either Criminal Possession of a Weapon in the Second or Third Degree. As evidenced by the successful outcome, this strategy was successful.

Petitioner responded primarily by seeking to impeach trial counsel's affidavit, principally by statements that trial counsel made during other proceedings in the case, which petitioner claimed were inconsistent with trial counsel's affidavit. He pointed particularly to a statement by counsel at his bail hearing, shortly after petitioner's arrest, in which counsel noted that petitioner had worked and remained in the community continuously since the crime and therefore could be trusted to be released with reasonable bail. Petitioner also submitted documents and third-party affidavits, arguing that they showed he was in the jurisdiction for at least part of the 1992-1995 period.

The Supreme Court denied the §440 motion. It held that petitioner's ineffective assistance claim was procedurally barred, and, in addition, rejected petitioner's claim on the merits. The Appellate Division denied leave to appeal.

## DISCUSSION

I. Procedural Default

The §440 Court held that petitioner's claim was procedurally barred on two grounds. First, the Court believed that based on the record developed at the Singer hearing, petitioner could have raised his ineffective assistance of counsel claim on direct

4

appeal, relying on NY CPL §440.10(2)(c), and waived his right to a collateral challenge by failing to do so. Alternatively, the Court held that petitioner's claim was barred based on NY CPL §440.10(3)(a), which precludes collateral review when a defendant has waived an appellate point by failing to preserve a point of error at trial. As to this latter ground, the Court reasoned:

> Defendant did not present any reason why he himself did not speak out about his counsel's alleged misrepresentation to the Court, contending that he and his counsel simply never discussed the matter. In view of the extensive pre-trial proceedings with respect to Defendant's whereabouts between 1992 and 1995, during which defendant was present, Defendant's claim that he simply did not speak to his counsel about it is not credible. Defendant did not raise any objection when counsel conceded that Defendant was not in the jurisdiction from 1992 to 1994, nor did he offer to obtain affidavit or other documents such as those he now offers in support of his claim.

Federal courts generally may not review a state court decision if it "rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (citations and quotation marks omitted). Thus, if a state court holding contains a plain statement that a claim is procedurally barred under state law, the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. Id. at 264 n. 10. The adequacy of an alleged state procedural bar, however, is itself a question of federal law, Lee v. Kemna, 534 U.S. 362, 375, 122 S.Ct. 877, (2002); Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir.1999), and "a [state] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed by the state in question.'" Garcia, 188 F.3d at 77 (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, (1991)).

5

New York CPL §440.10(2)(c) is among the most firmly established procedural bars in New York criminal procedure law. It codifies the common law principle that a defendant may not withhold arguments on appeal and then challenge his conviction in a collateral proceeding. However, its particular application to ineffective assistance of counsel claims is not "regularly followed" in the sense that it does not apply to all such claims.

Some ineffective assistance claims are fully apparent on the record, and therefore permit determination of the issue on direct appeal. See, e.g., People v. Brown, 45 N.Y.2d 852, 410 N.Y.S.2d 28 (1978); People v. Benevento, 91 N.Y.2d 708, 674 N.Y.S.2d 629 (1998). In such situations, where the petitioner fails to raise the claim on direct appeal and then makes a §440.10 motion that adds nothing to the record, the failure to raise the claim on direct appeal will result in the denial of both the §440 motion and a subsequent habeas corpus petition as procedurally barred. See Cappiello v. Hoke, 698 F.Supp. 1042, 1051-52 (E.D.N.Y. 1988). Other ineffective assistance claims – described by the New York Court of Appeals as the "typical" case – either require consideration of an affidavit from trial counsel as to why he made the choices he did, or the §440.10 motion will shed additional light on the alleged error by submitting evidence that is not within the four corners of the trial record. See People v. Brown, supra. In that kind of case, there is no procedural bar to review of the collateral motion because the issue could not have been determined on direct appeal. Indeed, raising the ineffective assistance claim only on direct appeal will result, in that situation, in denial of the claim by the state court, see People v. Gajadhar, 38 A.D.3d 127, 828 N.Y.S.2d 346 (1st Dep't 2007), and denial of

a subsequent federal habeas corpus petition for failure to exhaust state law remedies. See Walker v. Dalsheim, 669 F.Supp. 68 (S.D.N.Y. 1987).

In the instant case, the extensive evidence submitted on the §440 motion compels the conclusion that petitioner's claim could not properly have been raised on direct appeal. Petitioner's §440 evidence addressed two issues relating to the 1992-1995 period: (1) what petitioner told his counsel about his presence or absence from the jurisdiction; and (2) whether petitioner was actually present in the jurisdiction.[1] Other than trial counsel's concession at the Singer hearing, which is one of the alleged acts of ineffective assistance claimed by petitioner, none of the facts in the record addresses either of those issues. Moreover, trial counsel's explanation of his strategy was, at the very least, useful in the §440 motion, and of course would not have been part of the trial record. Thus, I do not believe that the Appellate Division could have fully considered petitioner's ineffective assistance claim based solely on the trial record. I therefore hold that New York CPL §440.10(2)(c) is not regularly followed in this kind of situation and does not bar petitioner's claim here.

The §440 Court's alternative ground for imposing a procedural bar – that petitioner had an obligation, when he heard his defense counsel concede his absence from the jurisdiction, to correct that concession – is even more tenuous. The §440 Court was suggesting that either petitioner should have arisen from his seat at the Singer hearing and corrected counsel or, at least, advised counsel during the hearing that the concession was

---

[1] I separate these issues because if, as the §440 Court determined, petitioner actually told his trial counsel that he was outside the jurisdiction, as described in trial counsel's affidavit, it does not matter if there are third party witnesses who can place petitioner within the jurisdiction. Trial counsel did not have a duty to investigate beyond what petitioner told him, especially given the detail that trial counsel received concerning this issue.

7

erroneous. The §440 Court relied on §440.10(3)(a), which precludes collateral challenge where defense counsel fails to object to something that occurs at trial. But that statute does not require a defendant to interject himself over his counsel's chosen conduct at trial in order to preserve the record, nor does it impose any kind of obligation on a defendant to correct his lawyer if his lawyer makes a mistake. The novel construction that the §440 Court placed on §440.10(3)(a) is not a "firmly established and regularly followed" procedure, and also does not bar federal habeas corpus review.

II. The Merits

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that a state court decided on the merits only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court (1) arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or (2) decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. A decision is deemed an "unreasonable application" of clearly established Supreme Court law if a state court

"identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. "Under the latter standard, 'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411). However, although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2000) (quotation marks and citations omitted). Moreover, under the AEDPA, a state court's findings of fact are "presumed to be correct." 28 U.S.C. §2254(e). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

Ineffective assistance of counsel claims are evaluated under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). A defendant must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. Strickland defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Id. at 694.

Under the AEDPA, a state habeas petitioner claiming ineffective assistance of counsel must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99 (2002); Aparicio

9

v. Artuz, 269 F.3d 78, 99 (2d Cir.2001) ("Under AEDPA we inquire only whether the Appellate Division's rejection of this claim amounted to an unreasonable application of Strickland.").

In the instant case, the §440 Court considered plaintiff's claims on the merits and rejected them under Strickland. The Court recited the two-prong requirement of Strickland and held that "counsel had a clear-cut strategy prior to trial" of giving the jury a compromise between conviction on the murder charge or acquittal, which explained why he did not move to dismiss the weapons charges on statute of limitations grounds. The Court found that the reasonableness of this strategy was supported by petitioner's acquittal on the murder charges, and that defense counsel had thereby provided "meaningful representation ... under the totality of the circumstances." The Court also held that "defendant failed to demonstrate that but for his counsel's [alleged] unprofessional errors, there would have been a more favorable result for defendant at trial." In light of the resolution of petitioner's claim on the merits, this Court is required to apply the deferential standard under the AEDPA.

That standard precludes relief here. First, the statute of limitations motion would have only dismissed the weapons charges, not the murder charges, which have no statute of limitations. It is a common defense strategy to refrain from moving against lesser charges to avoid conviction on the most serious charges, giving the jury, in effect, a "way out" between a murder conviction and an acquittal. Petitioner seems to assume that since he was acquitted of the murder charges, a successful statute of limitations motion would have let him walk; however, the converse is equally possible, and indeed, on this record,

more likely, as there was substantial direct evidence putting a discharging weapon in petitioner's hand at the time of the murder.[2]

On this point of strategy, petitioner seeks to impeach counsel's description of his thought process by pointing to a statement that his counsel made during the charging conference, to the effect that counsel did not want the weapons charge to go to the jury. Petitioner misunderstands the context in which that statement was made and overestimates its importance. Contrary to petitioner's implication, defense counsel did not move to dismiss the weapons charges. Rather, while the prosecutor was thinking about her response to the judge's question as to whether she wanted to keep the weapons charge, the judge turned to defendants' counsel and asked if they wanted to keep it, stating that if they did, "that would make a difference." Both defense counsel curtly responded in the negative. The prosecutor then responded that she did want to submit the charge to the jury.

This exchange reflects, at most, a change from the pretrial strategy based on counsel's having heard all of the evidence at trial. More likely, it was a strategic attempt to force the prosecutor to make a decision. Had she stated that she did not want to keep the weapons charges, defense counsel would still have been free to say that they did, despite their offhand negative response to the judge's question. In neither case does this brief exchange at the charging conference negate counsel's description of his pretrial strategy of giving the jury a choice other than conviction for murder or acquittal.

---

[2] Although petitioner attacks counsel's concession at the Singer hearing of his whereabouts, that concession is not directly related to the ineffective assistance claim that is at issue here. Petitioner has not challenged his counsel's handling of the Singer hearing. The concession made for the limited purposes of that hearing would not have prevented counsel from making a separate motion on statute of limitations grounds and taking a different position as to petitioner's whereabouts during the relevant period. What is really at issue here is counsel's alleged failure to investigate and assert the statute of limitations argument.

11

Moreover, aside from the issue of strategy, petitioner cannot prevail here if his counsel's rendition of the conversations on the issue of petitioner's whereabouts during 1992-1995 is credited. Trial counsel's affidavit stated that:

> Upon retaining my services and throughout trial, defendant had represented to me that he had absented himself, in violation of parole, from the jurisdiction for approximately thirty-two months between January 25, 1992 and 1995.
>
> Defendant told me that he had been aware of the fact that he had been named as a suspect in the ... [murder]. He stated that he was also aware that the police had unsuccessfully set up surveillance on at least two occasions, at his mother's home in an attempt to locate him....
>
> Defendant advised me that he was fearful of being arrested and that after [another co-defendant's] arrest he stopped reporting to his parole officer for approximately thirty-two months between 1992 and 1995. Defendant stated that, during that period, he stopped working, obtained two passports, and traveled to Panama.

The §440 Court made a factual determination to credit trial counsel's recitation of the facts he received from petitioner.[3] The Court found petitioner's version – that he had simply never discussed his whereabouts with trial counsel – not credible. There was ample circumstantial evidence to support that conclusion, as petitioner offered no explanation as to where his counsel might have gained his understanding if not from petitioner, as well as trial counsel's detailed rendition of their conversations. Moreover, although petitioner's failure to correct his counsel cannot form the basis of a procedural bar, it is relevant to a credibility determination that petitioner offers no explanation of

---

[3] Under New York law, a §440 Court is not required to hold an evidentiary hearing where the only evidence in support of a defendant's position is his own affidavit and the Court finds that based on all of the circumstances attending the case, there is no reasonable possibility that petitioner's assertion is true. NY CLS CPL § 440.30(4)(d). Here, the only witnesses to what petitioner told his trial counsel were the two of them.

why he never, even privately, consulted his trial counsel about the concession that he now claims was erroneous.[4]

That factual determination is presumptively correct under 28 U.S.C. §2254(e)(1). Petitioner has not overcome that presumption by pointing to trial counsel's inconsistent statement at the bail hearing; trial counsel had months after that to confer with his client and to learn the facts described in his affidavit.

There is a third reason why petitioner's argument fails. If petitioner's version of his conversation with trial counsel is credited, then, at worst, trial counsel misunderstood petitioner regarding his sojourn to Panama after the murder, or overstated the propriety of some tolling at the <u>Singer</u> hearing by conceding absence from the jurisdiction when, in fact, petitioner was present but deliberately delinquent in reporting to his parole officer. The distinction is immaterial because New York law treats absence from the jurisdiction, for statute of limitations purposes, the same as inability to locate a suspect with reasonable diligence. NY CPL § 30.10(4)(a) provides for a toll if either: "(i) the defendant was continuously outside this state or (ii) the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence."

This issue of "reasonable diligence" is indistinguishable from the issue determined by the trial court at the <u>Singer</u> hearing. Although petitioner, at that hearing, was charged with his counsel's concession that he was out of the jurisdiction, his co-

---

[4] Petitioner offered the §440 Court two post-conviction letters from his trial counsel in which, after petitioner suggested to trial counsel that he might have a statute of limitations argument, trial counsel agreed that the argument might be viable. Petitioner offers these letters to show the strength of the forgone argument, but they also suggest that trial counsel, who was responding as if he had never heard petitioner's new version before, accurately described their discussions on this topic in his §440 affidavit.

13

defendant Innis was not. In fact, Innis' position at the hearing was substantially the same as the argument for lack of reasonable diligence than petitioner might have made. Innis pointed out that he had always resided at the same address, both prior to and after the murder, throughout the applicable period; that he was working at a store quite close to the crime scene; and that he had always been present and available for arrest within the jurisdiction. Like petitioner here and in his §440 motion, Innis claimed that he was "available at all times and during the period of the last eight years, [even though] he was, on occasion, outside the jurisdiction."

Despite this proffer, based upon the State's evidence, the <u>Singer</u> Court found that the police had exercised reasonable diligence and therefore the delay in indictment did not present grounds for dismissal. The <u>Singer</u> Court held that "the People have come forward to my satisfaction with evidence that efforts were made to prosecute these individuals. ... I cannot believe that the police willfully decided not to seek out these defendants and prosecuted another person."

There are two significant points regarding the <u>Singer</u> Court's ruling. First, as suggested above, Innis advanced essentially the same position as petitioner advances here, and the Court found that the State's evidence met the standard of reasonable diligence. Second, even as to petitioner, burdened with his counsel's concession as he was, the Court was primarily concerned, on the due diligence point, with his flight to Panama after the shooting, in violation of parole, rather than the duration of his stay there, and that he needed to be extradited from Texas upon his arrest for this crime. The Court explained its ruling: "in light of the fact that its undisputed that he, in violation of his obligations under his parole status, left the jurisdiction and, indeed, even had to be

14

extradited by legal process from the State of Texas, that he has no entitlement now to place the burden on the People for the delay in prosecution. It was his fault that he was not more timely prosecuted and he has evaded the jurisdiction of the Court and frustrated the prosecution willfully." This is not to say that trial counsel's concession of continual absence did not bear on the Court's decision, it clearly did; however, it also bears note that it was the initial flight, which petitioner does not dispute (although he denies guilty knowledge), and subsequent extradition proceedings, that underlay the Court's decision.

Assuming arguendo that petitioner could satisfy the first prong of Strickland (i.e., that his counsel's decision or omission concerning a statute of limitations motion "fell below an objective standard of reasonableness"), the result at the Singer hearing compels the conclusion that petitioner has not shown "a reasonable probability that, but for counsel's unprofessional errors," his proposed statute of limitations motion would have succeeded. Petitioner's departure from the jurisdiction and decision to stop reporting to parole right after the murder; his arrest and extradition from Texas years later; the Singer Court's rejection of Innis' parallel position on a closely related, if not identical, legal theory; and petitioner's failure to demonstrate any prejudice from the delay (another fact found by the Singer Court), see NY CPL §30.20, 2003 Practice Commentary ("courts will tend to give heavy consideration to" prejudice to defendant in statute of limitations motions); all make it likely that a statute of limitations motion would have been denied by the same judge who heard the Singer motion on the same ground, that petitioner's whereabouts were not ascertainable with "reasonable diligence," as required by NY CPL §30.10(4)(a)(ii).

I therefore cannot conclude that the §440 Court's decision was contrary to or an unreasonable application of <u>Strickland</u>.

## CONCLUSION

For the reasons set forth above, the petition is dismissed. As this petition presents no "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. §2253(c). The Court certifies pursuant to 28 U.S.C. §1915(a) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* is denied for the purposes of appeal.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
/S/
_____
U.S.D.J.

Dated: Brooklyn, New York
June 21, 2007